JUDGE ELLIOTT
delivered the opinion oe the court.
The tract of land over which is located the passway now in dispute originally belonged to William Montgomery. He owned fourteen hundred acres. Of this tract James Renick became the owner of one hundred acres, N. A. Thompson of two hundred and twenty-five, and Feland of seventy - three acres. These tracts of land adjoined each other, and the Thompson and Feland tracts were located between the Renick tract and the Hustonville and Coffey Mills public road, a road much used by the people of that neighborhood.
No person now living can remember when a passway was established leading from the Renick tract through the Feland lands to the Hustonville and Coffey Mills public road.
Afterward a man by the name of Blain bought the Thompson tract, and then Blain and Read bought the Feland tract. The old passway was fenced on each side, and was called the old laneway from Renick’s to the public highway referred to. When Blain became owner of the Thompson and a part of *41 the Feland land, he wished to have the old passway changed, and consulted John Renick, then the owner of the Renick tract, upon the subject. Renick then claimed the old passway by the lane to the public road as a right, and opposed its obstruction or discontinuance, and never did assent thereto till Blain agreed to establish another passway over' the Thompson tract from Renick’s land to the public highway, and erect gates, etc., at his own expense, which he agreed to and afterward did do.
This new passway was established in 1849 or 1850. Blain afterward sold the Thompson tract, the land over which this passway led, to Boyle, and Boyle to Riffe, and Riffe to the appellant. From the establishment of this passway in 1850 it was continuously used by Renick till he sold to appellee, and by appellee and others residing in his vicinity till 1867, when Boyle obstructed it near the public road by substituting a fence for the gate, through which the public passed to the Hustonville and Coffey Mills road. On complaint made by appellee to Boyle, he informed him that his obstruction of the passway was but temporary, to prevent the passage over it of some suspected persons in the night time, and that while the obstruction continued appellee could pass through his yard and reach the public highway, and under these circumstances he (appellee) acquiesced in Boyle’s obstruction of the passway.
After about a month Boyle removed the fence and restored the gate, and the passway has been open and continuously traveled by the public ever since.
The privilege of passing over the old lane that led from the Renick lands over the Feland tract to the public highway had ripened by age into a prescriptive right which could neither have been successfully resisted by Feland or any one else, for this court in Hall v. McLeod, 2 Met. 98, rijled that, “According to the principles of the common law, a right to any incorporeal hereditament may be acquired by length of time. This *42 mode of acquisition is denominated prescription, and is founded on uninterrupted use and enjoyment time out of mind, or, in other words, for such a length of time that the memory of man runneth not to the contrary. Such an enjoyment of the use does not merely create a presumption of a right, but is conclusive evidence of its existence.”
According to the evidence in this record the lane passing over Feland’s lands was used as a passway by Renick and others as far back as 1839, and it then looked like an old road, and no witness’s memory reaches back to a time when it did not exist.
It is therefore evident that the agreement of Blain to open the new passway for the privilege of closing the old one was founded upon a valuable consideration. By this agreement he obtained the privilege of devoting to his own private use a strip of land running across his farm, which Renick and others had a right to use, and which, but for the agreement, could not have been obstructed by Blain without a violation of law.
The agreement between Blain and John Renick in regard to the change of this passway was verbal, and, it is insisted, is contrary to the statute of frauds, and consequently unenforceable.
It is true that a private passway over the land of another is an interest in realty, and in order to create it the law requires that the contract should be in writing. But the question to be determined in this case is whether the appellee and those through whom he claims have not used the passway in dispute, not as a privilege but under a claim of right, for such a period of time as to raise the presumption in their favor of a grant.
According to tlje evidence the pass way made by Blain, by virtue of the agreement between him and Renick has been used by appellee Renick and others in his vicinity, and its use *43 and enjoyment claimed as a right under that agreement from 1850 to 1875, when appellant removed the gate and fenced in the road, with the exception of the time it was obstructed by Boyle, who promised to and did remove the obstruction at appellee’s instance.
In the case of Hall v. McLeod, one McDowell, the vendor of McLeod, had agreed with Hall and others to establish a passway over the land afterward Sold to McLeod, and although this court say that, as that agreement was verbal, and the road only used for ten years when discontinued, McLeod can not be held responsible for its discontinuance, yet in the same opinion it is said that “ as it (the passway) was established for the benefit of the plaintiff and others, in pursuance of a promise to that effect, the presumption is that it was used as a mátter of right, and if such use had continued for twenty years it would have been sufficient to have conferred an absolute right to the easement.”
Here the passway has, under an agreement with the owner of the land at the time it was established, been used and enjoyed by appellee and others under a claim of right for twenty-five years, and they claim that that claim of right was founded on a valuable consideration.
We therefore conclude that the use and enjoyment of this passway for over twenty years under the contract with Blain have raised the presumption of a grant in appellee’s favor.
Wherefore the judgment of the lower court is affirmed.